**James CHAMP, Plaintiff,**

v.

**BALTIMORE COUNTY,
et al., Defendants.**

**Civ. A. No. HAR 93–4031.**

United States District Court,
D. Maryland.

April 19, 1995.

---

Michael L. Forman, Baltimore, MD, for plaintiff.

Michael A. Fry, Asst. County Atty., Baltimore County Office of Law, Towson, MD, for defendant.

## MEMORANDUM OPINION

HARGROVE, Senior District Judge.

Plaintiff James Champ initiated this suit against Baltimore County, Maryland, Roger B. Hayden, Baltimore County Executive, and Cornelius Behan, former Chief of Police for

Baltimore County Police Department (at times collectively referred to as "defendants"), all in their official capacities, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1983. Champ contends that defendants unlawfully discriminated against him by placing him on disability retirement due to the loss of use of his left arm.

Presently before the Court are cross-motions for summary judgment. The Court has reviewed the parties' memoranda and attached exhibits, and convened a hearing. For the reasons set forth in this memorandum opinion, the Court will grant summary judgment in favor of defendants.

## FACTS

Champ began his employment as a police officer with the Baltimore County Police Department in 1972. In July, 1976, Champ suffered an off-duty injury in a motorcycle accident, which left him with 100% loss in the use of his left upper arm. After his rehabilitation, Champ returned to the Police Department, in or around December 1, 1976, where he worked as an officer in various light-duty positions, including the report review section, central traffic division, central investigation division, and as a desk officer at police headquarters. In his Affidavit, Champ reports that he has been recertified by the Maryland Police Training Commission in the driving of emergency vehicles and the use of a firearm subsequent to sustaining his injury. Plaintiff's Exhibit A to Motion for Summary Judgment, Affidavit of James Champ, ¶ 13.

The Baltimore County Code and Baltimore County Police Department regulations limit an injured officer to 251 days of light-duty. However, it is undisputed that at the time of Champ's injury, Champ and other injured officers remained on light-duty assignment well in excess of 251 days. Champ continued to perform these light-duty assignments until 1992, nearly sixteen years after his injury occurred.

In 1992, then Chief of Police Behan determined that budgetary constraints, which prevented the hiring of new officers, mandated the removal of those officers who could not perform the duties of a police officer. His administration took steps to inform each officer, including Champ, of his/her right to seek medical retirement, service retirement, transfer into another position with the County service, leave of absence, or resignation. On December 28, 1992, effective January 1, 1993, Champ was placed on disability retirement.

Champ filed a charge of discrimination based on his disability against the Baltimore County Police Department with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Human Relations. On September 10, 1993, the EEOC issued its Determination, which concluded that Champ had failed to establish a violation of the ADA. Champ thereafter filed the instant action on December 9, 1993.

## DISCUSSION

Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering each motion, the Court must view the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The mere existence of a "scintilla of evidence" is not enough to frustrate a motion for summary judgment. In order to defeat a motion for summary judgment, the pleadings must show evidence from which the finder of fact could reasonably find for the party opposing judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The ADA prohibits discrimination in employment against a qualified individual on the basis of a disability. 42 U.S.C. § 12112. The Act defines discrimination as the failure of an employer to make reasonable accommodation to an otherwise qualified individual with a disability unless the employer can

show that the accommodation would impose an undue hardship. § 12112(b)(5)(A). The Rehabilitation Act proscribes discrimination against an otherwise qualified individual with a disability solely on the basis of such disability by any program or activity that receives federal funding. 29 U.S.C. § 794. Although Champ filed suit under the ADA and the Rehabilitation Act, both statutes employ the same standards for determining whether unlawful discrimination has occurred. 29 U.S.C. § 794(d). *Myers v. Hose,* 50 F.3d 278 (4th Cir.1995). To establish a violation of either statute, Champ must show (1) that he has a disability; (2) that he is otherwise qualified for the job; and (3) that defendants placed him on disability retirement due to discrimination solely on the basis of his disability. *Doe v. University of Maryland Medical System Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995); *Tyndall v. National Education Centers,* 31 F.3d 209, 212 (4th Cir. 1994). The parties do not dispute that Champ is disabled. Therefore, the Court will focus on the second and third prongs of this test.

The ADA protects only "qualified individuals" from discrimination based on their disability. A "qualified individual with a disability" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To satisfy this provision, an individual must be " 'able to meet all of a program's requirements in spite of his handicap.' " *Tyndall,* 31 F.3d at 213 (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). This inquiry asks whether Champ could perform the essential functions of his job, and if not, whether any reasonable accommodation by his employer would enable him to perform those functions. *Id.* Reasonable accommodation may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [and] acquisition or modification of equipment or devices, ..." § 12111(9)(B). *See also* 29 C.F.R. § 1630.2(o)(2)(ii). Champ bears the burden of establishing his ability to perform the essential functions of his position

with reasonable accommodation. *Tyndall,* 31 F.3d at 213.

Champ contends that the Court should enter summary judgment in his favor because defendants' actions in forcing him into retirement is a *per se* violation of the ADA and Administrative Rule 16–22 on its face has a disparate impact on individuals with disabilities. Without any argument or supporting caselaw directed at what exactly constitutes a *per se* violation of the statute, and whether such a theory in fact exists, the Court declines to adopt it. With respect to his claim of disparate impact, Champ has utterly failed to establish even a *prima facie* case. The Fourth Circuit has established that "[c]entral to proof of a *prima facie* case under this theory is proof of an employment policy or practice which, though facially neutral or even benign in actual purpose, nevertheless imposes a substantially disproportionate burden upon a claimant's protected group as compared to a favored group within the total set of persons to whom it is applied." *Wright v. National Archives & Records Service,* 609 F.2d 702, 711 (4th Cir.1979). Here, Champ has failed to present any evidence of the impact of Rule 16–22 on police officers who suffer either permanent disability or temporary injury, a necessary predicate to any comparison of the effect of the Rule between the two groups. Consequently, the Court will deny his motion for summary judgment.

Defendants contend that summary judgment is warranted because Champ cannot show that he is a "qualified individual." According to defendants, Champ is unable to satisfy the essential functions of his position as a police officer, which are making a forcible arrest, driving a motor vehicle under emergency conditions and qualifying with weapons, and no reasonable accommodation will enable him to perform these duties. Defendants base their conclusion on the uncontroverted medical testimony of Dr. Barbara McLean, medical director of Employee Health Services for Baltimore County, who examined Champ in October, 1992, in connection with his disability retirement. Deposition of Barbara McLean, Exhibit 2 to Defendants' Motion for Summary Judgment, p. 41.

As part of the evaluation, Dr. McLean physically examined Champ, asking him to take his shirt off and try to move his arm or do anything with it. He was unable to do so. Dr. McLean described his condition as a "flail arm. It's a useless arm. It just flails around." *Id.* at p. 46. After spending approximately two hours with Champ, Dr. McLean concluded that "Mr. Champ is [not] physically capable of performing the full duties of a police officer. He certainly cannot make a forcible arrest with the use of only one arm. Although he can drive a motor vehicle, I do not believe he can safely do so under emergency conditions." *Id.* at p. 64. Based on her knowledge that a forcible arrest could involve fighting with someone, subduing them, grabbing them, and handcuffing them, Dr. McLean concluded "[t]here was no way a one-armed person can do that." *Id.* at 64. She opted not to test Champ on his ability to make a forcible arrest because she opined "There was no doubt in my mind, whatsoever, that [Champ's ability to make a forcible arrest was] an impossibility." *Id.* at pp. 64–65.

Predictably, Champ disagrees with Dr. McLean's conclusions. Champ Affidavit, ¶ 17. To refute her medical assessment, however, Champ offers nothing more than his conclusory statement of "my belief that I can safely, competently and effectively perform all these job duties." Champ Aff. ¶ 10–11. Champ presumably relies upon his testimony that he has been recertified by the Maryland Police Training Commission in the driving of emergency vehicles and the use of a firearm subsequent to sustaining his injury to support his claim that he is capable of performing the duties that defendants have

identified as essential to being a police officer. Even assuming that such recertification is an appropriate and reliable measurement of his skills in these areas,[1] Champ offers no evidence that he is capable of making a forcible arrest, the third enumerated essential function of a police officer. Furthermore, even Champ's own physician concurs that he "has lost 100% use of his left upper extremity" as a result of his injury. Exhibit 1 to Champ Affidavit.

A blanket exclusion of all disabled police officers clearly constitutes unlawful discrimination on the basis of a disability because it is based on generalizations or stereotypes about the effects of a particular disability on an individual. *See Stillwell v. Kansas City Board of Police Comm'rs*, 872 F.Supp. 682, 686 (W.D.Mo.1995) (granting partial summary judgment to applicant born without left hand summarily denied license to become armed security guard without physical examination or opportunity to demonstrate his physical abilities). To combat such behavior, the ADA requires that the determination of whether an individual is otherwise qualified for a position rests on a case-by-case basis. *See* Background, Appendix to 29 C.F.R. Part 1630. Here, defendants have complied with the ADA's mandate of individualized inquiry. Dr. McLean spent approximately two hours evaluating Champ's physical capabilities. Although she reports that her actual physical examination of Champ lasted less than five minutes, the Court concludes that her assessments were adequately based on her October, 1992 session with Champ, as well as her repeated prior contacts with him since his injury. McLean Deposition, p. 46. *Cf. Stillwell*, 872 F.Supp. at 686–87.[2]

---

1. Colonel Blevins testified that he had gathered information indicating that those in charge of the pistol range had extended extreme courtesies to Champ to enable him to reach the minimum score needed to retain recertification, such as allowing him to use speed loaders and tuck the gun in his waist. In Colonel Blevin's opinion, these liberties were "totally inappropriate." Deposition of Colonel Jerry Lee Blevins, Exhibit #3 to Defendants' Motion for Summary Judgment, vol I, p. 27; vol II, p. 28–30.

   Furthermore, at the motions hearing, it was disclosed that the recertification in the driving of emergency vehicles, although issued every year to Champ, did not involve any retesting of his

driving abilities since his initial entrance onto the police force, which preceded his injury.

2. Defendants had various tests in place at the time of his disability retirement that measure an officer's ability to make forcible arrests, drive a vehicle under emergency circumstances or qualify with a firearm. According to Champ, defendants' failure to afford him an opportunity to demonstrate his actual skills despite the availability of such tests reflects a discriminatory assumption about the effect of his disability on his capabilities, exactly what the court in *Stillwell* struck down as a violation of the ADA. While testing Champ in the essential duties of a police

As an alternative tactic, Champ attacks the defendants' designation of the ability to make a forceful arrest, operate a motor vehicle in an emergency and qualify with weapons as essential functions of *all* Baltimore County Police Officers. According to Champ, several positions exist within the Police Department for sworn police officers to occupy where no expectation exists that they make forcible arrests, operate emergency vehicles or qualify with a firearm. Therefore, Champ contends that these three skills are not in fact essential to his position as a police officer, and thus are immaterial to a determination of whether he is a qualified individual with a disability.

In determining which job functions are essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Other relevant factors bearing on whether a function is essential to the job include the amount of time an employee spends on the job performing that function, the consequences of the employee not performing that function, the work experience of prior holders of that position and/or the current work experience of those in similar jobs. 29 C.F.R. § 1630.2(n)(3).

Dr. McLean testified that when she evaluates police officers for medical retirement or fitness to go back into duty, she bases her assessment on the officer's ability to make a forcible arrest, drive a vehicle under emergency conditions, and qualify with weapons. McLean Deposition, p. 40. She explained that the reason she uses these criteria in her evaluations is because the police department has defined them as essential duties. *Id.*, at p. 36. Although full duty positions exist where the officers filling those jobs do not generally have to perform these duties, they are still expected to be able to do so. Both Dr. McLean and Colonel Blevins testified that any police officer, no matter what their position, is expected to be able to satisfy these three duties. According to Dr. McLean, officers are often pulled from duty to assist in emergencies. McLean Deposition, pp. 52–53. Colonel Blevins reports that "at any point these officers can be reassigned as they are currently being reassigned to regular-duty status. It is my position that on a given moment's notice, that they could be required to report to a strike detail, any abortion demonstration, any of our greater personnel staff drain...." Blevins Deposition, vol. II. p. 11. Champ focuses on Colonel Blevins' estimate that a couple hundred or more non-patrol positions, filled by both police officers and those with rank, exist in the police force to support his contention that the police force has positions available that do not include these duties as part of their job description. No evidence exists, however, that the officers in these non-patrol positions are not likewise subject to reassignment and thus expected to be able to perform as well as any other officer on patrol.

Following the regulations, defendants emphasize the dangerous consequences of exempting Champ from performing these essential functions. Given the responsibility of a police officer to safeguard the public at all times, Champ's inability to make a forcible arrest, drive a vehicle under emergency circumstances, or qualify with a firearm poses a direct threat to the health and safety of

officer would have strengthened defendants' position in this case, the Court is wary of establishing a bright-line rule in discrimination cases based on a disability that an employer must test an employee's capabilities before rendering a judgment on them. Here, a medical expert examined Champ and concluded that he was unable to perform the essential tasks of a police officer. She declined to test Champ on his ability to make a forcible arrest because she had no doubt in her mind that it would be an impossibility. McLean Deposition, p. 65. In her opinion, a vehicle testing program would have been moot given her conclusion that he was unable to make a forcible arrest. *Id.* at p. 66. Colonel Blevins explained that he did not test Champ because of his medical report, which concluded that he could not perform the essential duties. Blevins Deposition, vol. I, p. 29. In any event, defendants ultimately offered to test at least Champ's firearm capabilities and his agility, but he declined. *See* Letter dated April 11, 1995 from defendants' counsel to Court. Champ cannot now blame defendants for failing to test him when he himself is unwilling to subject himself to such testing.

others. *See* discussion on direct threat, *infra*.

Although the identification of a job function as essential is a "factual determination," 29 C.F.R. § 1630.2(n), App. A., Champ has failed to provide any evidence that the ability to make a forcible arrest, drive a vehicle under emergency circumstances, or qualify with a weapon are not in fact essential duties of all police officers positions with the Baltimore County Police Department. He offers no testimony or other evidence from any individual to refute defendants' assertion that officers in non-patrol positions are subject to reassignment at any time, and thus must be able to satisfy the essential duties of a police officer, regardless of the actual position they may hold at any given time. In fact, Champ offers no evidence that he has not been called upon in the sixteen years since his injury to perform any of these functions. His case thus differs from that in *Dorris v. Kentwood*, 1994 Westlaw 762219, *4 (W.D.Mich. October 4, 1994), where the district court denied defendants' motion for summary judgment where the employee produced evidence that at the time his activities were restricted, he was already in a position in which he had never had to perform any of the strenuous physical activities identified as essential functions of all police officers by the police department.

In light of the ADA's instruction to consider the employer's judgment and any written job description in determining the essential duties of a position and the absence of any contrary evidence from Champ, the Court concludes that no genuine dispute exists that the ability to make a forcible arrest, drive a vehicle under emergency conditions and qualify with a weapon are essential functions that all Baltimore County police officers must be able to perform. *See Ethridge v. Alabama*, 860 F.Supp. 808, 816 (M.D.Ala.1994) (holding ability of police officer to shoot using two-handed "Weaver stance" was an "essential function" under ADA); *Simon v. St. Louis County*, 735 F.2d 1082 (8th Cir.1984) (affirming district court's determination that forcible arrest and transfer requirements were necessary to all police officer jobs and uniformly applied).[3]

Furthermore, an individual is not otherwise qualified if he poses a direct threat to the health or safety of others because of his disability that reasonable accommodation cannot eliminate. 42 U.S.C. §§ 12113(a)-(b). *See Doe v. University of Maryland*, 50 F.3d at 1264–65. A direct threat is a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The decision that an individual creates a direct threat to the health or safety of others must depend on an individualized assessment of the safety risks the disabled individual actually poses. *School Board of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987). Where an individual's disability creates a direct threat, the employer must determine whether a reasonable accommodation would either eliminate the risk or reduce it to an acceptable level. Appendix to 29 C.F.R. § 1630(r). In this case, neither party has suggested any accommodation that would reduce, let alone eliminate, this risk. Although Champ argues that assignment to a non-patrol position would not entail the expectation that he perform these functions in conjunction with his job, it is undisputed that

---

3. Champ's case thus differs from the situation in *Valdez v. Albuquerque Public Schools*, 875 F.Supp. 740 (D.N.M.1994), and *Taylor v. Garrett*, 820 F.Supp. 933 (E.D.Pa.1993). In both cases, the employer had reassigned its employee to light-duty following the employee's disabling injury. After the employer terminated the employee, the latter filed suit. The district court in each case framed the question of the employee's qualifications as "whether a plaintiff asserting a claim of discrimination on the basis of disability under the ADA must be qualified to perform the position for which he was originally hired, or whether he need only be qualified for the light-duty position to which he was reassigned after becoming disabled." *Valdez*, 875 F.Supp. at 744; *see also Taylor*, 820 F.Supp. at 937–38. Finding that the essential functions of the light-duty job differed from those of the position for which each employee had been hired, the court in each case decided that it need only look at the essential functions of the light-duty position to which the employee had been reassigned when determining whether the employee was a qualified individual with a disability. In contrast, the defendants have maintained throughout this case that the essential functions of a police officer apply with equal force to all positions held by a police officer in the police department.

the duties of a police officer are ongoing. Colonel Blevins testified that although the ability to make a forcible arrest does not fall within the normal course of an officer's duties while assigned to research, "if you're out on lunch break or you're out of the building or transferring between one building to another, you're out doing a research project and a crime is committed in your presence, you're required to take action." Blevins Deposition, vol. II, p. 11. Colonel Blevins elaborated "a police officer in planning and research is the same as a police officer in patrol. Disorderly conduct, a threat to someone else's life, or his or her own, occurs, whether it be in an office setting or whether it be going out to lunch or wherever it goes, the agency's position is that a police officer is a police officer, trained and capable of responding 24 hours a day to any demand where their services are required." Blevins Deposition, vol. II, p. 13.

Having concluded that the ability to make a forcible arrest, drive a vehicle under emergency conditions, and qualify with a weapon are essential functions of a position as a police officer, the Court must next determine whether Champ is capable of satisfying these essential duties with or without any reasonable accommodation. As discussed earlier, Champ presents no evidence that he is capable of effecting a forcible arrest. Furthermore, Champ conceded several times during the motions hearing that he is not capable of shooting a firearm with two hands as testing procedure for firearms requires. Therefore, he has not shown that he is able to perform the essential duties of a police officer without reasonable accommodation.

■ Instead, Champ argues that defendants have failed to reasonably accommodate him. Once a plaintiff produces sufficient evidence to establish a facial showing that accommodation is possible, the burden of production shifts to defendants to show its inability to accommodate. *White v. York Int'l. Corp.*, 45 F.3d 357, 361 (10th Cir.1995). Faced with such evidence, a plaintiff may not rest on his pleadings. Rather, he must offer rebuttal evidence concerning his individual capabilities and suggestions for possible accommodation. *Id.* "As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability." *Id.* (citing *St. Mary's Honor Center v. Hicks*, — U.S. ——, ——-——, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993)).

■ Like the determination of whether a task is an essential function of a job, the decision of whether reasonable accommodation would enable a disabled person to perform the essential functions of his job is also a fact-specific inquiry. *Hall v. U.S. Postal Service*, 857 F.2d 1073, 1079 (6th Cir.1988). An accommodation is unreasonable if it requires elimination of an essential duty. *Id.* at 1078.

■ Focusing instead on the ADA's general instruction that reasonably accommodation may include reassignment, Champ fails to specify the exact accommodation he seeks. Even assuming that Champ has satisfied this initial burden, however, defendants have sufficiently established that no reasonable accommodation could have enabled Champ to adequately perform the essential functions of his job as a police officer. Long before the passage of the ADA, the Police Department sought to reasonably accommodate individuals who suffered disabilities. Under Administrative Rule 16–22, a police officer who suffers a non-work related disability is entitled to assignment to a light-duty position for a maximum of 251 cumulative working days per incident. The regulation further provides that if the officer is unable to return to regular duty at the end of his assignment, referral of his case to the Retirement Office will proceed. Exhibit 1 to Defendants' Motion for Summary Judgment. Despite the policy's stated maximum of a 251 day assignment to light-duty, it is undisputed that strict compliance with this restriction did not occur. Although Champ contends that the selective enforcement of the rule against him was discriminatory, it is patently clear that the Police Department recommended Champ for disability retirement because he had remained in light-duty positions for the longest period of time, approximately sixteen years. Of the other officers who remained assigned to light-duty for more than 251 days, no one

approached Champ's length of tenure in that category. *See* Exhibit 11 to Blevins Deposition (longest assignment to light duty after Champ was 805 days for work-related injury; 620 days for non-work related injury). *Cf. Howell v. Michelin Tire Corporation,* 860 F.Supp. 1488, 1492–93 (M.D.Ala.1994) (employer's accommodation of other employees by reassigning them to light-duty tasks for much longer periods than plaintiff creates genuine dispute as to whether the employer reasonably accommodated plaintiff, and if not, whether it could have done so without undue burden).

The language of Administrative Rule 16–22 clearly indicates that assignment to light-duty is temporary. Colonel Blevins explained that allowing Champ to stay in light-duty any further is not an option because those positions are needed for officers who become disabled and seek temporary light-duty assignments under Rule 16–22. Blevins Deposition, vol. I, p. 102. Officers under disciplinary investigation are also assigned to these light-duty positions. *Id.* at pp. 98–99. Although the ADA provides that reasonable accommodation may include reassignment, the statute explicitly limits such reassignment "to a vacant position." 42 U.S.C. § 12111(9)(B).

> If the position was created as [a] temporary job, the reassignment to that position need only be for the temporary period of the job. Therefore, if a light-duty job is a temporary job, reassignment to that job need only be for the temporary period of the job and an employer need not convert a temporary job into a permanent one.

*Howell v. Michelin Tire Corporation,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994). Here, the Police Department maintains that it does not in fact have any permanent light-duty positions, let alone a vacant one into which defendants could transfer Champ, and Champ has not adduced any evidence to the contrary. Colonel Blevins described the problem of keeping disabled employees beyond the 251 day limit given department's budgetary constraints: "You can't hire somebody in the county over authorized strength. You have to have a vacancy to hire. If I have a hundred limited duty officers, I have a hundred regular duty officers that are missing [from] someplace, because as long as they're on limited duty, there's nobody on full duty in that authorized position. The authorized position stays in patrol or in traffic or in detectives or in wherever we elect to put it in the police department, but the body is working someplace else." Blevins Deposition, vol. I, pp. 97–98.

Furthermore, an employer need only reassign a "qualified individual with a disability" to a vacant position. Since Champ could not perform the "essential functions" of the position, with or without reasonable accommodation, he is not a qualified employee eligible for such reassignment. The fact that Champ has fulfilled the responsibilities of his various light-duty assignments since his injury competently, *see* Blevins Deposition, vol. I, p. 161; Champ Affidavit, para. 6, 10–12, fails to undermine the responsibilities of his various light-duty assignments since his injury competently, *see* Blevins Deposition, vol. I, p. 161; Champ Affidavit, para. 6, 10–12, fails to undermine the importance of requiring all officers to be able to perform the essential functions of their jobs. The mere existence of some non-patrol positions in which an officer would not generally be expected to make a forceful arrest as a part of his duties does not negate the conclusion that the essential functions of the job apply to all positions, thereby prohibiting Champ from being "otherwise qualified." *Simon,* 735 F.2d at 1084. Because Champ has failed to produce enough evidence from which a reasonable trier of fact could find that he has satisfied the second prong of the test for discrimination under the ADA or Rehabilitation Act, summary judgment is warranted.

## CONCLUSION

For the reasons stated above, the Court concludes that Champ is not an otherwise qualified individual with a disability entitled to protection under the ADA or the Rehabilitation Act. Therefore, the Court need not determine whether Champ may bring suit under both the ADA and 42 U.S.C. § 1983, an additional ground defendants raised. Ac-

cordingly, summary judgment will be entered in favor of defendants. It will be so ordered.