Jerry O. JOHNSON, Plaintiff,

v.

**LORAM MAINTENANCE OF WAY, INC., Defendant.**

No. Civ.98–1462(PAM/JGL).

United States District Court, D. Minnesota.

Feb. 5, 2000.

Richard A. Williams, Jr., Williams & Iversen, St. Paul, MN, for Jerry O. Johnson.

Joseph Walter Hammell, Clifford S. Anderson, Dorsey & Whitney, Minneapolis, MN, Linda M. Mealey–Lohmann, Mealey-Lohmann Law Office, Woodbury, MN, for Loram Maintenance of Way, Inc.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Par-

tial Summary Judgment on the issue of liability.[1] For the reasons set forth below, the Defendant's Motion for Summary Judgment is granted, and the Plaintiff's Motion for Partial Summary Judgment is denied.

## BACKGROUND

In April 1989, Jerry O. Johnson ("Johnson") was hired as a manufacturing "Shop Helper" by Loram Maintenance of Way, Inc. ("Loram"), which manufactures and leases heavy railway maintenance equipment. (*See* Anderson Aff.Ex. B.) In July 1989, Johnson began working as an "Assembler B." (*See id.*) An Assembler B performs assembly activities such as on electrical, mechanical, and fluid systems on large railroad maintenance equipment. (*See* K. Johnson Aff.Ex. 1.) In June 1993, Johnson was promoted to "Assembler A." (*See* Anderson Aff.Ex. B.) The essential duties and responsibilities of an Assembler A are similar to those of an Assembler B, but also include the ability to perform all of the assembly tasks in the shop, or to plan assembly procedures to utilize others when assigned by a supervisor. (*See* K. Johnson Aff.Ex. 2.) At some point Johnson was assigned custodial duties in lieu of typical Assembler A duties, allegedly because of poor attendance and inability to consistently perform assigned tasks. (*See* K. Johnson Aff. ¶ 6.) On June 9, 1994, Johnson was referred to psychologist Samuel Albert ("Dr. Albert") by Loram's Employee Assistance Resource program in order to obtain a mental health evaluation. (*See* Anderson Aff.Ex. C.) At some point, Johnson began having panic attacks at work. (*See* Anderson Aff.Ex. A at 199–200; Ex. Z.)

On July 6, 1994 Albert advised Loram that Johnson suffered from depression.

---

1. Plaintiff has not submitted any actual motion for partial summary judgment. However, Plaintiff has submitted "Plaintiff's Memorandum in Response to the Defendant's Motion for Summary Judgment and In Support of Plaintiff's Motion For Partial

Summary Judgment." (*See* Clerk Doc. No. 30 ("Pl.'s Resp.").) The Court will treat this submission as including a Motion for Partial Summary Judgment on the issue of liability. (*See* Pl.'s Resp. at 27.)

(*See id.*) On August 13, 1994, Johnson had a panic attack and was absent from work; his absence resulted in a three day suspension. (*See* Anderson Aff.Ex. V.) On or about August 25, 1994 Johnson had a severe panic attack at work, and took short term disability leave between August 25, 1994 and February 27, 1995. (*See* Anderson Aff.Ex. FF.) During this leave, Johnson threatened suicide on October 5, 1994, and was hospitalized. (*See* Anderson Aff.Ex. Q at 17.) Also during this leave, Dr. Albert sent Loram several letters indicating that Johnson was not capable of returning to work. (*See* Anderson Aff.Ex. Z, AA, BB, CC, DD.)

On February 17, 1995, however, Albert sent Loram an arguably equivocal letter suggesting that Johnson may be able to return to work. (*See* Anderson Aff.Ex. EE.) The letter stated, among other things:

> I am writing to update you once again regarding the status of your employee, Mr. Jerry Johnson. Since my previous letter to you, dated 1/2/95, Mr. Johnson has met with me for 9 sessions. In my last letter, I indicated that *there had been a general lack of progress* since my previous report and that changes in medication and therapy focus were being tried. *Since that time, medications were increased by Dr. Albee and the impact of this is being assessed.* Mr. Johnson's progress in psychotherapy has been slow but positive. We have discussed on several occasions what will be required for him to return to work successfully.
>
> Mr. Johnson is very eager to return to work at this time. His finances are depleted and the effects of this are a factor in his *lingering depression.* I strongly believe he needs to continue in psychotherapy and to take his medications as prescribed. At the same time, however, *I believe he is ready to be evaluated by either a psychiatrist or psychologist of your choosing regarding his fitness to return to work full-time.*

> *It is a difficult call at this point, but I believe he is marginally able to return to work full-time, assuming he is returned to his old position or to one that is similar. I do not think he is ready to handle a different position that would involve a significant change in work tasks, although this is certainly possible once he reestablishes himself.*

(*See* Anderson Aff.Ex. EE (emphasis added).) It was Dr. Albert's understanding that Johnson's work was limited to custodial duties rather than those of an Assembler A. (*See* Anderson Aff.Ex. R at 245.) Johnson concedes, however, that his job was that of an Assembler A, and not as a custodian, even though his duties were temporarily limited to sweeping floors. (*See* Anderson Aff.Ex. A at 124, 292, 367, 442–43.)

On February 27, 1995, Loram terminated Johnson's employment without stating its reasons for doing so. (*See* Anderson Aff.Ex. B.) On March 1, 1995, Johnson filled out a disability insurance claim stating that his total disability had prevented him from working between August 25, 1994 and March 1, 1995. (*See* Anderson Aff.Ex. GG.) Loram now argues that its workforce had decreased dramatically by early 1995, thereby necessitating Johnson's termination because it was no longer feasible to keep him in a custodial capacity. (*See* K. Johnson Aff. ¶ 7, Ex. 3 – 11.) Johnson filed suit alleging violations of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA), seeking lost wages and benefits and compensation for attendant emotional distress and embarrassment, and also seeking attorney fees. (*See* Compl. ¶¶ 21–25.) By a September 2, 1999 Order of Magistrate Judge Lebedoff, Johnson was permitted to amend his Complaint to also plead punitive damages with respect to his MHRA claim.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik,* 47 F.3d at 957.

## B. The Merits

### 1. *Statute of Limitations*

Loram argues that Johnson's ADA claim and MHRA claims are time-barred to the extent they rely on any discriminatory acts before February 26, 1995 and December 22, 1994, respectively. (*See* Pl.'s Mem. in Supp. at 18.) The ADA requires a plaintiff to file a charge with the appropriate federal or state agency within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1). Similarly, the MHRA requires such an administrative charge to be filed within one year of the allegedly discriminatory act. *See* Minn.Stat. § 363.06 subd. 3. Johnson filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on December 20, 1995. (*See* Anderson Aff.Ex. FF.) Therefore, Johnson must allege at least one discriminatory act occurring on or after February 24, 1995 and December 20, 1994, in order to fall within the ADA and MHRA limitations periods, respectively. Because Johnson alleges he was wrongfully terminated when he attempted to return from disability leave on February 27, 1995, his ADA and MHRA claims are not precluded by their respective limitations period.

Moreover, if Johnson establishes continuing pattern of discriminatory behavior, he would be able to recover both ADA and MHRA damages even for discriminatory acts that fall within these respective limitations periods under a continuing violations theory. *See Treanor v. MCI Telecommunications Corp.,* 200 F.3d 570, 573 (8th Cir.2000). As a result of his arguments to the Court, however, Johnson has unambiguously waived, any ADA or MHRA damages for discriminatory acts before August 1994, and any ADA damages for acts before February 27, 1995.[2] (*See* Pl.'s Resp. at 8, 24.)

### 2. *Analytical Framework*

Johnson argues that disability discrimination claims are no longer analyzed under the *McDonnell–Douglas* three-step burden-shifting framework after the recent U.S. Supreme Court decision in *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119

---

**2.** Johnson made such arguments in order to meet the requirement of *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999), that he reconcile his previously-filed insurance claim that he was "totally disabled" with his inconsistent claim in the present litigation that he was qualified to work at the time that he was terminated.

S.Ct. 2139, 144 L.Ed.2d 450 (1999); (see Pl.'s Resp. at 8–11.) First, Johnson notes that, under the ADA, "disability" includes being regarded as having a substantially limiting impairment, as well as actually having the impairment. Second, Johnson points out that the *Sutton* Court said that "[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton*, 119 S.Ct. at 2150. According to Johnson, this single remark modified the *McDonnell–Douglas* framework, such that establishing a prima facie case of disability discrimination is no longer necessary when the employer regards the employee as being disabled.

This argument is without merit. The Court finds it inconceivable that the Supreme Court would overrule the ubiquitous *McDonnell–Douglas* framework without providing any explanation for doing so. Moreover, the Eighth Circuit Court of Appeals has continued to analyze disability discrimination cases under the *McDonnell–Douglas* framework after the *Sutton* decision. *See Spades v. City of Walnut Ridge*, 186 F.3d 897, 899 (8th Cir. July 28, 1999). Thus, despite Johnson's arguments to the contrary, the *McDonnell–Douglas* three-step burden-shifting framework for analyzing disability discrimination claims continues to apply.

■ Under the first step of *McDonnell–Douglas,* Johnson must establish a prima facie case by showing that he: (1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the job; and (3) suffered adverse employment action under circumstances giving rise to an inference of unlawful discrimination because of the disability. *See Spades*, 186 F.3d at 899. If Johnson sets forth a prima facie case, then the second step of *McDonnell–Douglas* framework shifts the burden back to the Loram to articulate a legitimate, non-discriminatory reason for the action. *See*

*id.* If Loram does so, then the third step of the *McDonnell–Douglas* framework shifts the burden back to Johnson to present evidence that the reason proffered by Loram is pretextual. *See id.*

### 3. *McDonnell–Douglas Analysis*

■ The first element of Johnson's prima facie case requires Johnson to establish that he was disabled, as defined by the ADA, or at least that he was regarded as such by Loram. *See Spades*, 186 F.3d at 899. Johnson argues that it is undisputed that he was disabled. (*See* Pl.'s Resp. at 11, 13.) This is simply not the case. In its Answer, Loram directly challenges Johnson's claim of disability. (*See* Answer ¶ 33.) Therefore, the Court must first determine whether Johnson has carried his burden of establishing that he was disabled within the meaning of the ADA.

Johnson argues that he is entitled to relief because Loram regarded him as disabled, instead of on the basis of an actual disability. (*See* Pl.'s Resp. at 10–11.) Johnson has cited no particular evidence of record showing that Loram regarded him as disabled at the time that he was terminated on February 27, 1995. (*See id.*) The Court's independent examination of the record focuses primarily on the letter sent to Loram by Johnson's psychologist, Dr. Albert, on February 17, 1995, i.e., shortly before Loram terminated Johnson on February 27, 1995. (*See* Albert Dep. Ex. 36.) In the letter, Dr. Albert informed Loram of Johnson's "lingering depression." (*See id.*) This letter indicates that Loram was aware of Johnson's condition when it terminated him.

■ To establish that an employer regarded an employee as disabled, however, requires more than a mere awareness of the employee's condition. *See Olson v. Dubuque Community School Dist.,* 137 F.3d 609, 612 (8th Cir.1998). To survive summary judgment, an employee must provide evidence that supports a further inference that the employer regarded him

as disabled. *See id.* In doing so, the employee cannot merely point to the ways in which the employer believed his work was deficient as proof that it regarded him as disabled. *See id.* Johnson simply has not met this burden. Dr. Albert's statement that Johnson suffered from a "lingering depression," while indicating that Loram was aware of Johnson's condition, does not further establish that Loram regarded Johnson as being disabled. Therefore, Johnson's theory that he was regarded as disabled cannot stand.

Although Johnson has argued only that he was regarded as disabled by Loram, the Court will examine the record to determine whether Johnson is entitled to relief based on an actual disability, i.e., whether Johnson was substantially limited in one or more of his major life activities. *See* 42 U.S.C. § 12102. Dr. Albert's February 17, 1995 letter also states, "[i]t is a difficult call at this point, but I believe that [Johnson] is marginally able to return to work full-time, assuming he is returned to his old position or one that is similar. I do not think that he is ready to handle a different position that would involve a significant change in work tasks ..." (*See* Albert Dep.Ex. 36.) This creates a genuine issue of fact as to whether Johnson was substantially limited in one or more of his major life activities, as required by the ADA definition of disability. It does not, however, conclusively establish that Johnson was disabled when he was terminated.

■ A disability determination should take into account corrective measures, including the use of medications by the employee. *See Sutton,* 119 S.Ct. at 2149; *Spades,* 186 F.3d at 899 (holding that medications and counseling for depression are corrective measures to be taken into account per *Sutton* ). Therefore, the Court should take Johnson's antidepressant medications into account in determining whether he was disabled. In the present case, Dr. Albert's February 17, 1995, letter stated that the impact of Johnson's medications were still being evaluated in February 1995. (*See* Albert Dep.Ex. 36.) Thus, a genuine issue of material fact exists as to whether Johnson was actually disabled when Loram terminated him.

■ The second element in Johnson's prima facie case requires that he must have been qualified for the position from which he was terminated. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Determining whether an individual is qualified involves a two step analysis. First, the individual must satisfy the skill, experience, and educational requirements for the position. *See Weber v. Strippit, Inc.,* 186 F.3d 907, 916 (8th Cir.1999); 29 C.F.R. § 1630.2(m). Second, the individual must be able to perform the essential functions of the position with or without reasonable accommodation. *See id.* Johnson apparently possessed the skill, experience, and educational requirements for the Assembler A position because Loram itself promoted Johnson from an Assembler B to an Assembler A in June 1993. (*See* Anderson Aff.Ex. B.) Thus, only the second step of the qualification determination is at issue, i.e., whether Johnson could perform the essential functions of his position with or without reasonable accommodation.

■ In determining qualification, the Court must first determine exactly which job it is for which Johnson must establish his qualifications. "[A] court cannot evaluate a plaintiffs qualifications in a vacuum but must consider the specific essential functions of a particular job. The ADA does not prevent an employer from terminating a disabled person who is not qualified to perform the essential functions of a particular and available job." *Treanor v. MCI Telecommunications Corp.,* 200 F.3d 570, 576 (8th Cir.2000). Thus, the Court must decide whether the relevant essential job functions are those of an Assembler A,

which was Johnson's official job position prior to termination, or whether such functions should be ascertained with respect to his temporary de facto custodial duties.

The Eighth Circuit Court of Appeals faced a similar situation in *Browning v. Liberty Mut. Ins. Co.* 178 F.3d 1043 (8th Cir.1999). In *Browning*, the plaintiff was a long-term employee who developed cubital tunnel syndrome. *See id.* at 1046. After taking worker's compensation leave to undergo surgery, she returned to work under medical restriction and was temporarily assigned duties that were different and reduced from her duties prior to surgery. *See id.* Shortly thereafter, the plaintiff was dismissed for "job abandonment" after missing additional work and telling her doctor that she had quit her job. *See id.* at 1046–47. In dismissing the plaintiff's ADA claim on the grounds that the plaintiff was not a qualified individual under the ADA, the *Browning* Court stated that, "[t]he job for which [the plaintiff] must be qualified at the time of her discharge is not the temporary part-time position which she tried and failed to return to, but rather the job she held prior to surgery." *See id.* at 1048.

The *Browning* Court, therefore, determined job qualifications with respect to the employee's long-held, rather than temporary, job duties. *See id.* Cases that have decided job qualifications based on reassigned, rather than original, job duties are distinguishable from the present case. For example, in *Taylor v. Garrett,* the court determined job qualification using the employee's permanently reassigned light-duty position instead of his pre-injury position as a rigger, even though the employee was still classified as a rigger. *See Taylor v. Garrett,* 820 F.Supp. 933, 938 n. 9 (E.D.Pa.1993). The *Taylor* decision is distinguishable, however, because that employer had never disputed the employee's qualifications as a rigger and because the reassignment was permanent, rather than temporary, as in the present case. Similarly, in *Florence v. Runyon,* the court

determined job qualifications with respect to a reassigned position, noting that the reassigned position had been formally offered and accepted, rather than informally created and short-term, as in the present case. *See Florence v. Runyon,* 990 F.Supp. 485, 493 (N.D.Tex.1997). In another example, *Valdez v. Albuquerque Public Schools,* the facts established that the employee had worked in the reassigned position for two years, rather than temporarily, as in the present case. *See Valdez v. Albuquerque Public Schools,* 875 F.Supp. 740, 742 (D.N.M.1994).

The Eighth Circuit's decision in *Browning* is also supported by considerable authority from other jurisdictions. *See Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 697–98 (7th Cir.1998); *Clark v. Central Cartage Co.,* 73 F.3d 361, 1995 WL 758459, *4 n. 2 (6th Cir.1995) (unpublished opinion); *Shiring v. Runyon,* 90 F.3d 827, 831–32 (3rd Cir.1996); *Hill v. Harper,* 6 F.Supp.2d 540, 543 (E.D.Va.1998); *Bowers v. Bethany Med. Ctr.,* 959 F.Supp. 1385, 1390 (D.Kan.1997); *Champ v. Baltimore County,* 884 F.Supp. 991, 998 n. 3 (D.Md. 1995). Moreover, in the present case, Johnson conceded that he considered his job to be that of an Assembler A. (*See* Anderson Aff.Ex. A at 124, 292, 367, 442–43.) Thus, under the facts of the instant case, the Court will analyze Johnson's qualifications with respect to the essential functions of an Assembler A instead of with respect to his temporary de facto custodial duties.

 Loram argues that Johnson was unqualified to perform the essential functions of an Assembler A because of his poor attendance and lack of dependability. (*See* K. Johnson Aff. ¶ 6.) "[R]egular and reliable attendance is an essential element of most jobs." *Nesser v. Trans World Airlines, Inc.,* 160 F.3d 442, 445 (8th Cir. 1998). This is particularly true in factory positions. *See Jovanovic v. In-Sink-Erator Div. of Emerson Electric Co.,* 201 F.3d 894, 899 (7th Cir.2000). Even disability-related absences can render an employee

unqualified, unless the employee meets his burden of establishing that reasonable accommodation was possible. *See Moore v. Payless Shoe Source, Inc.,* 187 F.3d 845, 848 (8th Cir.1999) (finding that reasonable accommodation was not possible and, as a result, the employee was unqualified based on extended absences due to disability-related re-injuries); *Nesser,* 160 F.3d at 445–46 (finding that the employee's poor attendance, which was due to his Crohn's disease, prevented him from performing an essential function of his job, and that the employee failed to make a facial showing that reasonable accommodation was possible).

Johnson concedes that regular and reliable attendance is an essential function of the Assembler A job. (*See* Anderson Aff. Ex. A at 159, 269, 450.) Loram had previously rated Johnson's attendance as poor, and had even suspended Johnson for three days because of his poor attendance. (*See* Anderson Aff.Ex. D, Ex. V; *see also* Dolven Aff.Ex. 1.) When Johnson was terminated on February 27, 1995, he had been unable to work since August 25, 1994. (*See* Compl. ¶ 15; Anderson Aff.Ex. AA, BB, CC, DD.) Johnson fails to cite any evidence that his attendance was adequate to perform the duties of the Assembler A job.

Even Dr. Albert opined, in his February 17, 1995 letter to Loram, that Johnson was only "marginally able to return to work full-time, assuming that he is returned to his old position or one that is similar. I do not think that he is ready to handle a different position that would involve a significant change in work tasks." (*See* Anderson Aff.Ex. EE.) As Dr. Albert understood, however, Johnson's previous work tasks were limited to custodial duties rather than those of an Assembler A. (*See* Anderson Aff.Ex. R at 245.) Loram apparently assigned Johnson such custodial duties due to his inability to dependably perform the essential functions of an Assembler A. (*See* K. Johnson Aff. ¶ 6.) Johnson concedes, however, that his job was that of an Assembler A, and not as a custodian, even though his duties were limited to sweeping floors. (*See* Anderson Aff.Ex. A at 124, 292, 367, 442–43.) In summary, even Dr. Albert recognized that in February 1995, Johnson was still unable to perform the essential functions of an Assembler A.

██ Johnson argues that Loram's contention that he is unqualified is improperly based on: (a) evidence acquired after his termination; (b) reasons undisclosed to Johnson at discharge in spite of Loram's contractual obligation to do so; and (c) Loram's failure to undertake an independent medical examination to establish that Johnson was unqualified to return to work. These arguments are not persuasive.

First, Loram obviously knew about Johnson's poor attendance and Dr. Albert's February 17, 1995 letter when it terminated Johnson on February 27, 1999. Therefore, Loram's decision is not improperly based on evidence acquired after it terminated Johnson. Second, in its February 27, 1999 termination letter, Loram did not give poor attendance or any other reason for terminating Johnson, in spite of its obligation to do so under the collective bargaining agreement ("CBA") between Johnson's labor union and Loram. (*See* Anderson Aff.Ex. LL, Ex. U at ¶ 8.01.) However, Johnson's rights under the CBA are not at issue in the present case. Although the Court agrees that Loram's failure to contemporaneously tell Johnson why he was terminated is relevant to the issue of pretext, Johnson has offered absolutely no legal authority for his proposition that this failure creates an estoppel precluding Loram from later presenting its reasons for terminating Johnson. (*See* Pl.'s Resp. at 13.) Lastly, Johnson's argument that Loram should have undertaken its own medical examination to establish that he was unqualified to work amounts to nothing more than an impermissible attempt by Johnson to shift to Loram his prima facie burden of proving qualification. While Dr. Albert did state, in his February

17, 1995 letter, that he believed Johnson was "ready to be evaluated by either a psychiatrist or psychologist of your choosing regarding his fitness to return to work full-time," as discussed above, he conceded that Johnson was not ready to resume his Assembler A duties or anything more than custodial duties. (*See* Anderson Aff.Ex. EE.) Based on his poor attendance and the other evidence relating to job performance, the Court finds that Johnson has not met his prima facie burden of establishing that he was qualified to perform the essential elements of the Assembler A position when he was terminated.

■■■■ Having found that Johnson was unqualified to perform the Assembler A job, the inquiry turns to whether reasonable accommodation was possible. *See Nesser*, 160 F.3d at 446. There is no evidence in the record that Johnson personally requested any particular accommodation from Loram. However, Dr. Albert's letter stated that Johnson was able to return to his previous work tasks. (*See* Anderson Aff.Ex. EE.) Because Johnson's previous work tasks were merely custodial rather than the tasks of an Assembler A, the Court finds that Dr. Albert's letter constitutes sufficient evidence of a request for accommodation. (*See* Anderson Aff. Ex. A at 124, 292, 367, 442–43.) However, Johnson has failed to make any facial showing that such an accommodation was reasonable, or even possible, in February 1995. Reassignment to a different position is only reasonable if a vacant position is available. *See Nesser*, 160 F.3d at 446. Loram has introduced considerable undisputed evidence that its workforce had decreased dramatically by early 1999, particularly in the shop where Johnson worked, such that no custodial position was available at that time. (*See* K. Johnson Aff. ¶ 7, Ex. 3–11.) Because Johnson has failed to meet his burden of showing that a reasonable accommodation was possible, his ADA claim fails.

### C. State Law Claim

Johnson concedes that the *McDonnell–Douglas* framework governs his state law claim under the MHRA. (*See* Pl.'s Resp. at 25.) Accordingly, for the reasons discussed above with respect to Johnson's ADA claim, the Court grants summary judgment in favor of Loram on the MHRA claim.

### CONCLUSION

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Motion For Partial Summary Judgment (Clerk Doc. No. 30.) is **CONVERTED** into a Motion for Partial Summary Judgment on the issue of liability, which is **DENIED.**

2. Defendant's Motion for Summary Judgment (Clerk Doc. No. 25) is **GRANTED** as to all counts of Plaintiff's Complaint (Clerk Doc. No. 1), which is hereby **DISMISSED WITH PREJUDICE** in its entirety.