United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-2477

_____

Pamela Olson,                                    *
                                                 *
            Appellant,                           *
                                                 *
      v.                                         *   Appeal from the United States
                                                 *   District Court for the Northern
Dubuque Community School District,               *   District of Iowa.
                                                 *
            Appellee.                            *

_____

Submitted:  January 16, 1998

Filed:  March 2, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD,
      Circuit Judge, and SACHS,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

      Pamela Olson contends that she was fired from her job as an elementary school
guidance counselor with the Dubuque Community School District ("Dubuque") in
violation of the Americans with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12101-
12213.  On a motion for summary judgment, the lower court held that Ms. Olson had
failed to show that she was disabled within the meaning of the ADA and therefore

_____

      [1]The Honorable Howard F. Sachs, United States District Judge for the Western
District of Missouri, sitting by designation.

could not make out a *prima facie* case of discrimination.  Ms. Olson appeals; we affirm the judgment of the lower court.[2]

## I.

In 1993, Ms. Olson began a new job as an elementary school guidance counselor for Dubuque.  She holds a bachelor's degree in elementary education and a master's degree in counseling and human development and, from 1984 until 1993, she was an elementary school guidance counselor with Jessup Community Schools, a smaller school district.

Ms. Olson has a history of depression.  On two occasions, she sought medical attention and was able to gain control of her condition within a few weeks.  Just prior to taking her position with Dubuque, she began to suffer from depression once again.  She felt withdrawn and unable to interact with her co-workers, and she believed that her state of mind adversely affected her job performance.  Shortly after she began working at Dubuque, she informed Mary Kay Heilbing, her supervisor, and Lesley Stephens, the principal of the elementary school to which she was assigned, about her condition.  She also asked Dubuque to restructure her schedule and to require her supervisors to give more specific direction on how Dubuque wanted her to operate the program to which she was assigned.  Dubuque denied her requests, asserting that that was not their management style and that it was her job to organize the program herself.

Ms. Olson then sought medical attention from Dr. Yasyn Lee, a psychiatrist, who placed her on anti-depressant medication.  Dr. Lee felt that, by the spring of 1994, Ms. Olson's depression was again under control, and Dr. Lee opined at that time that she was able to "think clearly, make decisions well, and has good concentration."

---

[2]The Honorable John A. Jarvey, Chief United States Magistrate Judge for the Northern District of Iowa, sitting by consent of the parties.  *See* 28 U.S.C. § 636(c)(1); *see also* Fed. R. Civ. P. 73(a).

Despite the improvement in her mental health, the evaluations of Ms. Olson's performance for the 1993-94 school year were very negative. Dubuque created a plan of improvement for Ms. Olson for the 1994-95 school year, but when her work did not improve, she was placed on paid leave in the fall of 1994. Following an arbitration hearing, she was terminated from her employment in the spring of 1995.

II.

To make out a *prima facie* case for a violation of the ADA, Ms. Olson must show that she was disabled within the meaning of the ADA. *See Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996). Disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *See* 42 U.S.C. § 12102(2). To establish that she has a disability under § 12102(2)(A), Ms. Olson must show, in the circumstances of this case, that her depression significantly restricted her opportunities for employment (itself a "major life activity") by limiting her ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and training. *See* 29 C.F.R. § 1630.2(j)(3)(i); *see also Aucutt*, 85 F.3d at 1319.

We believe that the lower court correctly decided that there was no evidence before it from which a reasonable fact finder could conclude that Ms. Olson was disabled within the meaning of 42 U.S.C. § 12102(2)(A). Ms. Olson maintained that she was perfectly capable of working as an elementary school guidance counselor, although she asserted that depression often made her unable to perform to her own standards. Throughout the 1993-94 school year, she reported to work regularly and held individual, small group, and classroom guidance sessions. Despite periodic episodes of depression and a belief that she did not receive enough support from her co-workers, she felt she that was doing a "satisfactory job." There is no evidence here

that a disability rendered her unable to do her particular job, much less that she was unable to do a broad range of jobs.

Ms. Olson argues that the severe symptoms of withdrawal that she experienced were sufficient by themselves to establish that she was disabled within the meaning of the ADA. She cites an EEOC Enforcement Guidance for the proposition that her poor interaction with her supervisors was the manifestation of a disability. The EEOC notice that she relies on does in fact state that while occasional conflict with colleagues is not sufficient to demonstrate a "substantial limitation" within the meaning of the ADA, "[a]n individual would be substantially limited ... if his/her relations with others were characterized <u>on</u> <u>a</u> <u>regular</u> <u>basis</u> by <u>severe</u> problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary. These limitations must be long-term ... to justify a finding of ADA disability" (emphasis in original). *EEOC Enforcement Guidance: Psychiatric Disabilities and the Americans with Disabilities Act* § 9 (March 25, 1997), EEOC Compliance Manual (BNA).

While the EEOC's interpretation of the ADA is entitled to deference, there was nevertheless no evidence before the lower court that Ms. Olson's conflicts with Dubuque were the manifestation of a disability. Ms. Olson sought additional assistance in running the guidance program but was told that it was her duty to run it; uncontroverted evidence shows that she was capable of working in other roles at the school. Although she often felt that she was in an unsupportive and unfriendly environment at the school and that other teachers were distant, there is no evidence that Ms. Olson experienced withdrawal on a "regular basis" while at work at Dubuque. Nor is there evidence that Ms. Olson's environment at Dubuque was characterized by "consistently high levels of hostility" or that her occasional conflicts with her supervisors were long-term. We cannot say on this record that the lower court erred in holding that no reasonable fact finder could conclude that episodic personality conflicts, a history of depression notwithstanding, without more, were the result of a disability.

Ms. Olson maintains finally that she was disabled within the meaning of 42 U.S.C. § 12102(2)(C) because her employer regarded her as being disabled. *See* 29 C.F.R. § 1630.2(l). It is true, as we have said, that Dubuque was generally aware of Ms. Olson's condition, including the fact that she had sought and received medical treatment. Such an awareness is necessary for Dubuque to have regarded her as disabled, but it is not sufficient. There must be more before a plaintiff can survive summary judgment. *See Aucutt,* 85 F.3d at 1319-20. Ms. Olson suggests that there is more because of the criticism of her work in her 1993-94 performance evaluation. But that evaluation simply identifies the ways in which her supervisors believed that her work was deficient. There is nothing in it that would support an inference that Dubuque regarded her as disabled.

### III.

For the reasons stated, we affirm the judgment of the lower court.

SACHS, District Judge, concurring.

I agree with the opinion, particularly as it relates to the second year of Ms. Olson's service. This was the critical period in which it was decided that she should not be retained as a school counselor. It was acknowledged at that time that she no longer was suffering from a diagnosed depression. Moreover, the "accommodations" urged by Dr. Lee in October 1994 were largely lacking in specificity. In effect, Dubuque was asked to remedy stressful conditions that might create "increased risk for relapse" into depression.

As stated in a current ruling by the Third Circuit, "compliance would depend entirely on (the employee's) stress level at any given moment." Gaul v. Lucent Technologies, Inc., _____ F.3d _____, 1998 WL 19937 (3rd Cir. 1998). Such an "amorphous 'standard' " is not usable to establish an accommodation mandated by law.

-5-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.