# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1903

_____

| | | |
|---|---|---|
| Eugene Perkins, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| St. Louis County Water Company, | * | District of Missouri. |
| | * | |
| Appellee. | * | |

_____

Submitted: September 22, 1998

Filed: November 10, 1998

_____

Before HANSEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Eugene Perkins worked for the St. Louis County Water Company in construction and maintenance for almost three years, and during that time he was repeatedly absent from work. Under St. Louis County's "progressive discipline policy" for addressing employee attendance deficiencies, a worker who is repeatedly absent is subject to verbal counseling, oral and written warnings, suspensions, and, ultimately, if the worker's attendance still shows no sign of improvement, termination of employment. Mr. Perkins was repeatedly counseled, was given numerous written warnings, and was suspended on three occasions for excessive absenteeism. Finally, he was fired when

he failed to show up for work, and to notify his supervisor of his need to be absent, over a Memorial Day weekend.

Mr. Perkins sued, contending that he was fired in violation of the Americans with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12101-12213, especially § 12112(a), and the Rehabilitation Act, *see* 29 U.S.C. §§ 701-797b, especially § 794(a), § 794(b)(1)(A). We refer in this opinion only to Mr. Perkins's ADA claim, but the legal principles applicable to it are equally applicable to his Rehabilitation Act claim. *See Allison v. Dep't of Corrections*, 94 F.3d 494, 497 (8ᵗʰ Cir. 1996); *see also* 29 U.S.C. § 794(d). We therefore do not address his Rehabilitation Act claim separately.

The district court granted summary judgment for St. Louis County, ruling that because Mr. Perkins was unable to attend work on a reliable basis, which was one of the essential functions of his job, he was not a qualified individual under either the ADA or the Rehabilitation Act. Mr. Perkins appeals, and we affirm the judgment of the district court.[1]

I.

Mr. Perkins has Meniere's disease, a condition that causes occasional episodes of vertigo and vomiting. He also suffers from a permanent slight hearing loss, and his hearing worsens to some degree when he is in the midst of a Meniere's-related episode. Mr. Perkins first contends that two of his absences (including the final Memorial Day incident) were caused by Meniere's-related episodes, and that St. Louis County should have accommodated him by "excusing" those absences, that is, by not counting them against him in determining that he had exhausted the options under St. Louis County's progressive discipline policy and was thus subject to termination. In particular, Mr. Perkins asserts that he was absent over the Memorial Day weekend because of a

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Meniere's-related episode, and that he was unable to use the telephone to call his supervisor because his condition had affected his hearing. Mr. Perkins admits that none of his other, numerous absences from work was related to his disability.

To make out a *prima facie* case for a violation of the ADA, Mr. Perkins must show that he was disabled within the meaning of the statute. *See Aucutt v. Six Flags over Mid-America, Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." *See* 42 U.S.C. § 12102(2)(A). Mr. Perkins maintains that he was disabled because his Meniere's-related episodes interfered with his ability to work on two occasions. But to demonstrate that he was "substantially limit[ed]" in the major life activity of working, more is required: Mr. Perkins must show that his condition significantly restricted his ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and training. *See* 29 C.F.R. § 1630.2(j)(3)(i); *see also Olson v. Dubuque Community Sch. Dist.*, 137 F.3d 609, 611-12 (8th Cir. 1998).

We do not believe that Mr. Perkins has produced evidence from which a reasonable fact finder could conclude that Meniere's disease disabled him within the meaning of the ADA. During his three years of employment with St. Louis County, Mr. Perkins suffered only two Meniere's-related episodes: The first episode caused him to miss two weeks of work, and the second, which occurred almost a year later, caused him to miss three days. We believe that a medical condition that causes an individual to miss two and one-half weeks of work in a three-year period is not sufficient to render that individual disabled under the ADA. In short, we see no evidence that his disability rendered Mr. Perkins "unable to do [his] particular job, much less ... unable to do a broad range of jobs," *Olson*, 137 F.3d at 612. Nor has Mr. Perkins produced any evidence that the Meniere's-related episodes substantially limited any other major life activity of his.

We therefore hold that Mr. Perkins has not offered evidence sufficient to lead a reasonable fact finder to conclude that his Meniere's disease constituted a disability within the meaning of the ADA.

II.

Mr. Perkins also maintains that St. Louis County discriminated against him because of his permanent hearing loss. Hearing impairment, depending on its severity, can be a disability under the ADA. *See* 29 C.F.R. § 1630.2(i). To establish an ADA claim based on his hearing impairment, however, Mr. Perkins must produce evidence from which a reasonable fact finder could conclude that St. Louis County terminated him or discriminated against him in some other way because of his hearing loss, *see Price v. S-B Power Tool*, 75 F.3d 362, 365 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 274 (1996), and we believe that he has failed to do so.

We do not believe that the record could support a finding that Mr. Perkins's termination for excessive absenteeism was related to his permanent hearing loss. He concedes that he never missed work because of his hearing impairment. He asserts, however, that on one occasion (during the Memorial Day weekend already adverted to), he was unable, because of difficulties with his hearing, to use the telephone to alert his supervisor to his need to be absent and that the resulting unexcused absence caused his termination.

After carefully reviewing the record, we disagree. We believe that this claim is based on temporary, severe hearing difficulties that were directly related to his Meniere's disease (which we have already determined did not disable Mr. Perkins), rather than on his permanent hearing impairment. Under normal circumstances, Mr. Perkins is apparently able to understand others on the telephone despite his hearing impairment, as long as they speak slowly and loudly. In addition, while he has difficulty understanding strangers speaking on the telephone, it is uncontested that he did use the telephone on several occasions both at work and at home.

Mr. Perkins seems to admit that it was only during a Meniere's-related episode that his hearing decreased to such a level that he was unable to use the telephone to alert his supervisor to his need to be absent. For example, he stated in his deposition that he did not attempt to contact his supervisor over the Memorial Day weekend because he was sick and his "hearing went down and out" during the Meniere's-related episode. When he was asked why he believed he was terminated because of his permanent hearing loss, as opposed to Meniere's disease, moreover, Mr. Perkins was unable to state any reasons whatsoever. He merely responded, "I was dizzy. ... It may not deal with the hearing loss, but I had dizziness because I had inner ear infection. ... [I]f I didn't have that Meniere's disease, I would be at work." In his brief on appeal, Mr. Perkins argues that his absences from work "should have been excused because they resulted from episodes of Meniere's disease"; he makes no mention of his permanent hearing impairment playing any role in those absences. Finally, Mr. Perkins's fiancee stated in an affidavit that Mr. Perkins asked her to contact his supervisor about Mr. Perkins's absence, explaining that "he could not contact his supervisor himself because he was unable to hear well enough due to his Meniere's disease."

In short, although Mr. Perkins alleges that his hearing impairment was a separate disability from his Meniere's disease, he has not produced sufficient evidence that his hearing impairment was linked to his absences from work and to his subsequent termination for excessive absenteeism. We note that he does not claim that but for his permanent hearing loss, the Meniere's-related hearing difficulties alone would not have resulted in his absence and subsequent termination. We conclude therefore that Mr. Perkins did not produce sufficient evidence to allow a reasonable fact finder to decide that St. Louis County discriminated against him because of his hearing impairment.

## III.

Because we find, first, that Mr. Perkins's Meniere's disease was not a disability within the meaning of the ADA and, second, that there is no evidence that St. Louis County discriminated against him because of his hearing impairment, we need not address the question of whether the accommodations that he requested were reasonable under the ADA. For the foregoing reasons, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, concurring separately.

I concur with the opinion of my colleagues and agree that summary judgment of dismissal against Mr. Perkins was entirely warranted on the record in this case. I write separately, however, in order to emphasize two points.

First, the employer in this case, Saint Louis County, maintained a generous policy on absenteeism. The policy provided for reasonable but escalating punishment for excessive absences and even went so far as to provide counseling services in order to modify unsuitable behavior. In return, the policy required common sense, good faith efforts by employees to notify their supervisors of impending absences and, where appropriate, to provide documentation of alleged illness.

Even if we assume, arguendo, that Mr. Perkins is a "qualified individual" and suffers under a "disability"---within the meaning ascribed to those terms under the ADA---he failed to show, in any fashion, that St. Louis County "discriminate[d] against [him] because of the disability" as he was required to do in order to make out a prima facie case under the statute.[2]

---

[2]The statute, 42 U.S.C. § 12112(a), creates the baseline prohibition of the ADA by stating that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

The facts of this case show plaintiff guilty of truly excessive absences. He had dozens of well chronicled absences, none of which may be explained by Meniere's disease. His poor attendance led, progressively, from verbal warnings to written warnings; then from written warnings to four separate counseling sessions; then from counseling to independent periods of suspension. He was suspended for three days. Then more absences. He was suspended for five days. More absences. He was suspended for ten days. Finally, the Meniere's-related absence which broke the camel's back became unexcused---and therefore grounds for his prompt termination---when he failed to properly notify his employer, as he was required to do.

The record establishes that Mr. Perkins abused St. Louis County's absenteeism policy. Under these circumstances, the employer has established a separate cause for discharge wholly apart from the incidents related to Meniere's disease. Perkins was fired because of unreliability as a general matter, not because of his disability. I would affirm on these grounds.

Second, I observe that this court's opinion should not be read to imply that Meniere's disease is outside the bounds of disability per se. Under other circumstances, periodic dizzy spells attributed to Meniere's disease might well require an employer to make reasonable accommodation under the ADA. This, however, is not that case.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

(emphasis added).

-7-