**Michael McCARTY, Plaintiff**

v.

**MARPLE TOWNSHIP AMBULANCE CORPS, Defendant.**

**Civil Action No. 10–5747.**

United States District Court,
E.D. Pennsylvania.

June 5, 2012.

---

James A. Bell, IV, Jennifer C. Bell, Philadelphia, PA, for Plaintiff.

John C. Bobber, Jr., Mintzer, Sarowitz, Zeris, Ledva & Meyers LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

## I. INTRODUCTION

Plaintiff Michael McCarty brings suit against Marple Township Ambulance Corps ("Marple Ambulance") alleging that Marple Ambulance terminated him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and that Marple Ambulance discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and Section 1981 of the Civil Rights Act of 1866 (" § 1981"), 42 U.S.C. § 1981.[1] The Title VII claims include unlawful termination and hostile work environment.[2] McCarty also brings disability and racial discrimination claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951.[3] In its motion for summary judgment, Marple

1. Under 42 U.S.C. § 1981, "all persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

2. In his complaint, McCarty does not explicitly refer to a hostile work environment. But under his Count II Title VII claim, he includes an allegation of harassment. Compl. ¶ 40. Therefore, I will treat this allegation as a hostile work environment claim.

3. Federal jurisdiction over McCarty's ADA, Title VII, and § 1981 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his PHRA claims pursuant to 28 U.S.C. § 1367. PHRA violations are subject to the same analysis as ADA and Title VII claims. *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir.1999) (noting that analysis of ADA claim applies to PHRA claim); *Gomez v. Alle-*

Ambulance has countered that it fired McCarty for repeated tardiness and that it did not discriminate against him. For the reasons set forth below, I will deny Marple Ambulance's motion for summary judgment as to McCarty's Count I disability discrimination claim and Count IV PHRA disability discrimination claim.[4] I will grant Marple Ambulance's motion for summary judgment as to McCarty's Count II Title VII claim for unlawful termination and hostile work environment, Count III § 1981 Claim for unlawful employment practices based on race, and Count IV PHRA racial discrimination claim.

Under the ADA, employers are prohibited from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).

## II. BACKGROUND[5]

Michael McCarty is an African American man who is a certified Emergency Medical Technician ("EMT") and who suffers from Attention Deficit Hyperactivity Disorder ("ADHD"). According to his psychiatric evaluation, McCarty has suffered from ADHD since he was three-years-old. Pl.'s Opp'n, Ex. A. As a result of his disorder, he has trouble thinking and concentrating. He also has trouble engaging in interpersonal relationships. The ADHD makes McCarty hyperactive, impatient, and prone to outbursts. McCarty Dep. 68:9–69:20, 268:19–271:7.

On September 11, 2006, Marple Township Ambulance Corps hired McCarty as a part-time EMT and ambulance driver. Marple Ambulance President Karen Standen and Division Chief Bill Downey informed McCarty that the job would lead to a full-time position and it did. During his interview, McCarty told Standen and Downey that he takes Adderall for his ADHD. McCarty Dep. 68:12–16. He informed them that his ADHD did not prevent him from doing anything but that his ADHD made him hyperactive and made it more difficult for him to concentrate. McCarty also told them that as a result of his disorder, he was not the "fastest at typing" and would need more time than others to learn the area's geography. McCarty Dep. 68:18–70:18. McCarty also told other employees about his ADHD, and the entire squad was aware of his disability. McCarty Dep. 131:19–20.

From 2006 until his termination in early 2008, McCarty responded to emergency

gheny Health Servs., Inc., 71 F.3d 1079, 1083–84 (3d Cir.1995) (noting that analysis of Title VII claim applies to PHRA claim). The elements of a § 1981 claim are identical to the elements of a Title VII employment discrimination claim. Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir.2009). Therefore, no separate discussion of the state claims is necessary. Additionally, McCarty has filed a separate complaint against Marple Ambulance alleging retaliation claims stemming from the same underlying facts in violation of 42 U.S.C. § 1981 and 43 Pa. Stat. Ann. § 951. Case No. 11–cv–07600.

4. Under his Count IV PHRA claim, McCarty also alleges that he was harassed due to his disability. McCarty, however, does not provide any factual evidence of ADHD-related harassment.

5. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

calls with a partner. On some occasions he drove the ambulance, and he often had volunteers ride along with him. But he had trouble completing some of his tasks. Volunteers and co-workers also filed multiple complaints against him. On May 21, 2007, for example, a co-worker complained to Downey that McCarty had "a problem concentrating on and off calls." Downey Dep. 34:24–35:21. Downey forwarded the email to Standen and wrote: "Should we give [McCarty] another chance?". Downey Dep. 36:15–16.

McCarty was also subjected to a racial epithet by one of his co-workers. On November 17, 2007, around 7:30pm on a dark winter night, McCarty and his partner Phil were on duty at the secondary station in Newtown. They finished their shift and returned the ambulance to Carmen Lilick and Martin, who were working the overnight shift. Phil, however, forgot to change the ambulance's trash can, and Carmen was really angry that the ambulance was dirty. McCarty Dep. 176:11–178:11. McCarty and Phil were already running late since they had responded to a call towards the end of their shift. McCarty tried to calm Carmen down and explain that it was mostly Phil's fault. But Carmen "was just so angry" that he looked at McCarty and yelled: "I am not someone's f**king n*gger." [6] McCarty Dep. 181:22–182:3. McCarty was very upset and Carmen tried to apologize by saying that he was not referring to McCarty as a n*gger. Volunteer Steve Moist then approached the group. As Steve approached, McCarty asked him: "[W]hat's up? How you doing?". McCarty Dep. 195:6–10. Steve looked around and responded: "I don't see. All I can see is blackness." McCarty was really angry and went inside. McCarty Dep. 195:10–19.

Three days later, on November 20, 2007, McCarty wrote an email to Downey and Standen describing the incident. Def.'s Mot. Summ. J., Ex. G. McCarty took issue with Carmen's use of the "N-word" in his presence. In regards to Steve's comment, McCarty admitted that he had never heard Steve make racial comments in the past and that he did not think Steve could actually see him. McCarty also stated that he was the second African American at Marple Ambulance and that he had never had this problem in the past. He added that he loved his job and that he had "been treated for the most part very well from both of [his] boss[es]." *Id.* Downey forwarded the email to Standen with the message: "I think it's time to split the *boys* up … I'm not sure the legal end to this but if Carmen isn't fired he needs to move to a different shift." *Id* (emphasis added). McCarty alleges that he and Downey spoke numerous times as Downey investigated the matter. McCarty Dep. 217:13–14.

Marple Ambulance suspended Carmen for two days and switched his shift. Following the punishment, McCarty called Downey at night to express his outrage at what he perceived to be far too lenient of a punishment. Downey told him that the investigation was over and that the case was closed. McCarty responded that he would have to take matters into his own hands. Downey told him that he would report this conversation to the organization's board of directors ("Board"). McCarty Dep. 222:15–18; Def.'s Mot. Summ. J., Ex. H. On December 5, 2007, the Board held a special meeting to address the incident. McCarty attended and expressed his opinion that Carmen should have been fired. The Board responded

---

**6.** McCarty alleges that Carmen also made a racial comment to him six or eight years ago when they were working together at BLS Ambulance. McCarty, however, had never told anyone at Marple Ambulance about the prior incident. McCarty Dep. 187:2–189:5.

that the matter was appropriately handled and that McCarty should not have called Downey late at night to yell and scream at him. McCarty Dep. 235:20–236:24; Def.'s Mot. Summ. J., Ex. J. McCarty alleges that the individuals at the Board meeting called him "crazy" and told him that he "needed help." Pl.'s Resp., App. 1.

McCarty also had a problem with tardiness. McCarty was late on December 2, 2007; December 5, 2007; February 5, 2008; and February 13, 2008. McCarty Dep. 238:6–239:24; Def.'s Statement Undisputed Facts, Doc. No. 15. On February 14, 2008, McCarty received an official warning regarding his tardiness.[7] McCarty Dep. 240:4. On March 7, 2008, the entire squad received an email reminder regarding daylight savings time and the need to set clocks ahead one hour. Mot. Summ. J., Ex. N. McCarty read the email but forgot to change his clock. On Mach 9, 2008, McCarty woke up at 6:55am and called the Station to let someone know that he was running late. McCarty Dep. 254:1–256:11. Downey called McCarty back five minutes later and told him to turn around and go back home. Downey understood this to mean that he was being terminated. Standen later confirmed that McCarty was being terminated for tardiness. McCarty Dep. 258:4–259:10. McCarty alleges that tardiness was a pretext for his firing and that Marple Ambulance really terminated him due to his ADHD disability. Since his termination, McCarty has worked as an EMT and/or driver for Novocare, Plymouth Ambulance, Transcare, Susquehanna EMS, Liberty Ambulance, BLS Ambulance, and Western Berks. Pl.'s Resp., App. 2.

## III. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. Analytical Framework for Discrimination Cases

#### 1. The *McDonnell Douglas* Burden-shifting Framework

■ A plaintiff asserting an ADA claim or a Title VII claim may proceed using a

---

7. McCarty refused to sign the warning since he believed that he should have been excused from one of the late charges due to an accident in the area. McCarty Dep. 240:13–18.

three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999) (applying the *McDonnell Douglas* burden shifting rules to Title VII claims); *Walton v. Mental Health Ass'n of Southeastern Penn.*, 168 F.3d 661, 667–68 (3d Cir.1999) (applying the *McDonnell Douglas* burden shifting rules to ADA claims).

■■■ First, the *McDonnell Douglas* approach requires a plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Under this approach, a plaintiff must show that:

(1) [h]e is a member of a protected class;

(2) [h]e was qualified for the position he sought to attain or retain;

(3) [h]e suffered an adverse employment action; and

(4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir.2008). Courts vary the precise components required for a prima facie case because "the elements ... depend on the facts of a particular case." *Jones*, 198 F.3d at 411. The burden to establish a prima facie case is not an onerous one, but a prima facie case can allow a court "to eliminate the most obvious, lawful reasons for the defendant's action." *Pivirotto v.*

*Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir.1999).

■■■ If a plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant succeeds, the burden returns to the plaintiff to show that the employer's stated reason for termination was merely a pretext for intentional discrimination. *Id.* at 804, 93 S.Ct. 1817. To survive a motion for summary judgment, a nonmoving plaintiff must point to evidence that: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;" or 2) permits the factfinder to reasonably conclude "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994).

## 2. The *Price Waterhouse* Mixed-motive Approach

■■■ A plaintiff claiming a Title VII violation may also proceed using the mixed-motive approach, as defined by the Supreme Court in *Price Waterhouse*.[8] *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In Title VII cases, the mixed-motive approach applies when a plaintiff contends that an adverse employment decision was made for both legitimate and discriminatory reasons. *Makky*, 541 F.3d at 213. The Third Circuit has noted:

---

**8.** Courts may only use the *Price Waterhouse* mixed-motive approach in non-Title VII cases in which the plaintiff has introduced direct evidence of disparate treatment. Circumstantial evidence is insufficient. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751,

761–62 (3d Cir.2004). In his opposition to Marple Ambulance's motion for summary judgment, McCarty references the mixed-motive theory for the first time in a footnote. Doc. No. 18, at 18 n. 8.

The *McDonnell Douglas* burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case because the issue in a mixed-motive case is not whether discrimination played the dispositive role but merely whether it played 'a motivating part' in an employment decision. *Id.* at 214. To succeed on a Title VII claim using a mixed-motive approach, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (internal citations and quotation marks omitted). The Title VII mixed-motive formulation anticipates that there may be both a legitimate and prohibited reason for the defendant's action. Thus, a defendant cannot avoid liability simply by pointing to a legitimate reason for the adverse employment reason.

### 3. Title VII Hostile Work Environment Framework

 A plaintiff may also prove that an employer violated Title VII by showing that the employer's actions created a hostile work environment. *Huston v. Procter & Gamble Paper Prods.,* 568 F.3d 100, 104 (3d Cir.2009). To establish a hostile work environment claim, a plaintiff must establish that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race; and (5) there is a basis for employer liability. *See Andreoli v. Gates,* 482 F.3d 641, 643 (3d Cir.2007).

### B. McCarty's ADA Claims

 Under the *McDonnell Douglas* approach, McCarty must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.,* 134 F.3d 576, 580 (3d Cir.1998). Marple Ambulance does not dispute that McCarty was qualified to perform the essential functions of the job and that he suffered an adverse employment decision when he was terminated. So the only question is whether McCarty was disabled under the ADA. The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1).[9] McCarty argues

9. The ADA was amended on January 1, 2009. *See* ADA Amendments Act of 2008, Pub.L. 110–235, 122 Stat. 3553 (2008). However, the law as it existed prior to the amendments applies here because the events giving rise to McCarty's claims occurred before the amendments became effective, and neither party contends that the amendments should apply to this case. *See Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 185 n. 2 (3d Cir.2010) (applying the ADA and its regulations as they existed prior to the ADA Amendments Act where the parties did not argue that the amendments had retroactive effect). The amendments do not apply retroactively. The Court of Appeals for the Third Circuit has stated, albeit in a not-precedential opinion, that the amendments cannot be applied retroactively. *Britting v. Sec'y, Dep't of Veterans Affairs,* 409 Fed.Appx. 566, 569 (3d Cir.2011)

that his ADHD qualifies as a disability under either subsection A or subsection C. Marple Ambulance contends that McCarty cannot establish a prima facie case of discrimination because his ADHD is not an ADA-defined disability.

### 1. Is McCarty Disabled under the ADA?

ADHD is an impairment within the meaning of the ADA, but it only qualifies as a disability under the ADA if it "substantially limits one or more [of McCarty's] major life activities." 42 U.S.C. § 12102(1); *see Love v. Law Sch. Admission Council, Inc.*, 513 F.Supp.2d 206, 224 (E.D.Pa.2007) (citing *Rothberg v. LSAC*, 300 F.Supp.2d 1093 (D.Colo.2004); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 2001 WL 930792 (S.D.N.Y. Aug. 15, 2001); *Price v. Nat'l Bd. of Med. Exam'rs*, 966 F.Supp. 419 (S.D.W.Va.1997)). McCarty asserts that the major life activities affected by his ADHD are concentrating, thinking, and interacting with others. The Third Circuit has already held that concentrating and thinking are major life activities. *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 569 (3d Cir.2002) (concentrating); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (thinking). The Equal Employment Opportunity Commission ("EEOC") regulations consider "major life activities" to include "interacting with others." 29 C.F.R. § 1630.2(i). Marple Ambulance does not dispute that these are major life activities. Thus, the question becomes if McCarty's ADHD substantially limited his ability to perform any of those major life activities.

 The EEOC regulations define "substantially limits":

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Taylor*, 184 F.3d at 307 (quoting 29 C.F.R. § 1630.2(j)(1)). In determining whether someone is substantially limited in a major life activity, "[t]he relevant question is whether the difference between his ability and that of an average person is qualitatively significant enough to constitute a disability." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir.1999). The determination requires a highly individualized assessment. *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

 In regard to concentration and thinking, plaintiffs can support their claims by showing that these limitations also negatively impact their everyday activities. *See Warshaw v. Concentra Health Servs.*, 719 F.Supp.2d 484, 495 (E.D.Pa.2010). In *Gagliardo*, plaintiff afflicted by Multiple Sclerosis utilized video and audio tapes to

---

(not precedential). Moreover, it has also recognized that all other circuit courts that have reached the issue "have uniformly concluded that the ADAAA is not retroactively applicable." *Id.* at 569 n. 3 (citing *Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed.Appx. 85, 87 n. 2 (2d Cir.2010); *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n. 4 (8th Cir.2010); *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n. 3 (1st Cir.2009); *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir.2009); *Fredricksen v. United Parcel Serv.*, 581 F.3d 516, 521 n. 1 (7th Cir.2009); *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940–42 (D.C.Cir.2009); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565–67 (6th Cir.2009); *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n. 8 (5th Cir.2009)).

help her with her memory and concentration issues. *See Gagliardo,* 311 F.3d at 569. Plaintiff's husband and son also testified that outside of work she was "often fatigued and had trouble concentrating and focusing." *Id.* at 569–70. In *Taylor,* bipolar plaintiff sought treatment on twenty-five different occasions during the year and took medication every day that needed "careful monitoring." *See Taylor,* 184 F.3d at 309.

Interacting with others qualifies as a disability under the ADA when "an individual's socialization is 'characterized on a regular basis by severe problems such as high levels of hostility, social withdrawal, or failure to communicate when necessary.'" *Peter v. Lincoln Technical Inst., Inc.,* 255 F.Supp.2d 417, 433 (E.D.Pa.2002) (quoting *Olson v. Dubuque Cmty. Sch. Dist.,* 137 F.3d 609, 612 (8th Cir.1998)). To make such a claim, McCarty needs to show more than a "mere difficulty in getting along with coworkers, irritability or temperamentality." *Peter,* 255 F.Supp.2d at 433 (quoting *McAlindin v. County of San Diego,* 192 F.3d 1226, 1235 (9th Cir.1999)).

McCarty does not show how his substantial limitations impact his everyday activities. Yet in the psychiatric evaluation of McCarty, Dr. Eric W. Fine noted that McCarty had trouble "concentrating on any specific topic, focusing and maintaining continuity." Pl.'s Opp'n, Ex. A. McCarty also provides significant evidence that he was substantially limited at work. In regard to concentration and thinking, McCarty had significant problems preparing trip reports and learning the driving routes. After completing their shifts, drivers are supposed to prepare summary reports. McCarty was a very poor typist and speller. McCarty Dep. 68:18–20. As a result, Management often made him redo his reports due to spelling errors and improper documentation. Management even suggested that McCarty take a computer class, and a coworker gave him a dictionary to help with his spelling. Ultimately, McCarty had to complete his reports when he was "off the clock" due to Marple Ambulance's unwillingness to pay for the extra time he required to complete them. McCarty Dep. 86:3–87:8. Other workers had reports returned to them, but none of the other employees had to complete them off duty. McCarty Dep. 89:8–10. In addition to the problems with the reports, McCarty had a very difficult time learning the geography of the area. In a February 2007 Memorandum from Management, McCarty was criticized for his lack of "Knowledge of the Area/Directions." Pl.'s Resp., Ex. D. Co-workers expressed utter disbelief that McCarty continued to make wrong turns in familiar areas and took so long to reach areas close to the station. Pl.'s Resp.; Ex. D.

McCarty provides the following evidence that he had trouble interacting with co-workers, volunteers, and patients. In addition to screaming at those riding along in the ambulance with him, McCarty also yelled at patients. Responding to a 20-year-old female with abdominal pain, McCarty yelled in her face: "[A]re you pregnant & [H]ave you had sex lately"? Def.'s Mot. Summ. J., Ex. F. Multiple volunteers lodged complaints against him. Volunteers and coworkers accused McCarty of degrading others on calls and yelling at the crew, patients, and patients' families. *Id.* One individual even complained that McCarty "need[ed] a huge shot of Concerti [sic] mixed with Ritalin or something." *Id.* Concerta and Ritalin are common medications used to treat ADD and ADHD. The February 2007 Memorandum from Management also accused McCarty of being "WAY too hyper on calls" and bossing others around. "It is scary—he is

almost schizophrenic.... Mike is too loud and scares people." *Id.* The Memorandum concluded by listing the following goals, amongst others: "STOP YELLING and calm down on calls;" "If you are the crew chief—DO NOT BARK orders." *Id.*

The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. Based on the evidence, a reasonable jury could conclude that McCarty is "[s]ignificantly restricted as to the condition, manner or duration" under which he can concentrate, think, and interact with others "as compared to the condition manner, or duration under which the average person in the general population" performs these major life activities. *Taylor,* 184 F.3d at 307 (internal quotation marks omitted). Therefore, a genuine dispute exists as to whether McCarty is disabled.[10]

## 2. Tardiness and Pretext

McCarty has established a prima facie case, so the burden shifts to Marple Ambulance to articulate some legitimate, non-discriminatory reason for its decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Marple Ambulance contends that it fired McCarty due to repeated tardiness. From December 2007–March 2008, McCarty was late five times. On March 7, 2008, three weeks after formally warning McCarty about his tardiness, Downey reminded the squad members to change their clocks ahead Saturday night due to daylight savings time. Mot. Summ.

J., Ex. N. Yet McCarty forgot, and Management fired him when he was late for his Sunday morning shift. McCarty, moreover, was not the only employee fired for tardiness. Marple Ambulance also terminated Carmen Lilick and Jonathan Blatman for the same reason.[11] Downey 30(b)(6) Dep. 72:23–73:3.

Marple Ambulance has offered a legitimate, non-discriminatory reason for its decision, so the burden shifts back to McCarty to show that tardiness was merely a pretext for intentional discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. "To discredit [Marple Ambulance's] proffered reason, however, [McCarty] cannot simply show that [his] employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [Marple Ambulance], not whether the employer is wise, shrewd, prudent, or competent." *Fuentes,* 32 F.3d at 765.

On February 20, 2008, Marple Ambulance Management issued a formal Complaint Memorandum to McCarty addressing his "perceived angry & agitated behavior." Mot. Summ. J., Ex. M. The listed complaints appeared to revolve around McCarty's ADHD-related problems with concentrating, thinking, and interacting with others. The Memorandum referred to McCarty as "paranoid" three different times and described him as "hyper" and in need of "serious help." *Id.* The Memorandum also noted that McCarty "need[ed] to stop speaking on others behalf" and accused him of "display[ing] a confrontational [attitude]

10. Pleading in the alternative, McCarty also argues that he qualifies as disabled under the ADA because Marple Ambulance regarded him as disabled. The Third Circuit "finds no difficulty with pairing the two claims in one complaint." *Pathmark,* 177 F.3d at 189 (3d Cir.1999). But I do not need to address the

"regarded as" claim since I have already denied summary judgment on the grounds that McCarty is not disabled under the ADA.

11. Marple Ambulance hired Blatman to replace McCarty. Downey 30(b)(6) Dep. 74:23–75:1.

over a gear issue." *Id.* The Memorandum concluded with the warning: "Mike is told that if this continues—he may be terminated." *Id.* The Memorandum, however, does not make a single reference to tardiness, even though Management issued the Memorandum a week after McCarty was late for the fourth time in ten weeks. If tardiness were such a serious matter, one would think that the Memorandum would have referenced the issue. Less than three weeks after warning "hyper" McCarty that he needed to "STOP being paranoid," Marple Ambulance Management terminated him on the alleged grounds of tardiness. Based on the temporal proximity between the Memorandum alluding to McCarty's ADHD symptoms and the actual termination, a "factfinder could reasonably conclude that [Marple Ambulance's] proffered [reason was] fabricated (pretextual)." *Fuentes,* 32 F.3d at 764. Therefore, I will deny summary judgment as to McCarty's Count I and Count IV disability discrimination claims.

### C. McCarty's Title VII Claims

#### 1. McCarty Fails to Satisfy his Burden Under the *McDonnell Douglas* Pretext Analysis

First, the *McDonnell Douglas* approach requires a plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The first three elements of McCarty's prima facie case are not in dispute. He is African American and a member of a protected class under Title VII. He is qualified for the position of EMT/driver from which he was discharged. He suffered an adverse employment action when Marple Ambulance terminated him. However,

Marple Ambulance disputes the fourth element of McCarty's prima facie case: "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir.2008) (discussing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

McCarty offers the following facts to support his case. A co-worker used the "N-word" in his presence after complaining about McCarty's failure to clean out the ambulance at the end of his shift. Downey and Standen, McCarty's superiors, learned about the remark and did not terminate the co-worker. A few months later, Downey and Standen terminated McCarty. None of the first five or six people hired after McCarty for the same position was African American. Downey 30(b)(6) Dep. 16:2–16. Although McCarty does not need to prove that he was replaced by someone outside of his protected class, the subsequent hiring pattern has some "evidentiary force." *See Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 354 (3d Cir.1999). Given the flexibility of the fourth factor, I will move on to the second step of the *McDonnell Douglas* test. *See id.* at 357.

In the second step of the *McDonnell Douglas* test, the burden shifts to defendants to provide a "legitimate, nondiscriminatory reason" for termination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Marple Ambulance has met that requirement. Downey states that McCarty was terminated because of his repeated tardiness. Downey 30(b)(6) Dep. 39:12. Between December 2, 2007 and March 9, 2008, McCarty admits that he was late on five different occasions.[12]

12. Although McCarty admits that he was late on all five occasions, he believes that he should have been excused for one of them due to an accident in the area. McCarty Dep. 240:13–16.

In step three of the *McDonnell Douglas* analysis, the burden returns to McCarty to show that Marple Ambulance's "stated reason for [the adverse employment action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. McCarty must provide evidence that:

> 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994). McCarty fails to meet this step of the *McDonnell Douglas* test. He can only point to one racist remark made by a co-worker. The comment was abhorrent and inexcusable. But "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir.1992). Carmen made the remark approximately five months prior to McCarty's termination. Upon learning of the incident, Marple Ambulance's "decisionmakers" promptly investigated and suspended Carmen. They also switched him to another shift. McCarty may have been justified in seeking his co-worker's immediate termination. But that employment decision does not cast any doubt on McCarty's subsequent tardiness. Nor does the suspension indicate that McCarty's termination was remotely related to racism. Marple Ambulance Management encountered discrimination in the workplace and took prompt action to address it. McCarty's superiors did not commit racial discrimination; they sought to eliminate it. Therefore, McCarty's Title VII unlawful termination claim fails under the *McDonnell Douglas* framework.

## 2. McCarty Fails to Satisfy the *Price Waterhouse* Mixed-motive Approach

"A plaintiff may prevail on a mixed-motive theory by showing that an adverse employment decision was based on both legitimate and illegitimate reasons." Pl.'s Opp'n 18 n. 8 (citing *Makky*, 541 F.3d at 213). But to show that a Title VII claim satisfies the mixed-motive analysis, a plaintiff must provide "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race ... was a motivating factor'" behind the defendant's employment action. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (citations omitted). A co-worker made an isolated racist comment, and Marple Ambulance Management suspended him for it. The co-worker had absolutely no input into McCarty's termination, and there is no evidence of any racism by either Chief Downey or President Standen. Therefore, McCarty's Title VII claim cannot proceed under a mixed-motive theory.

## 3. McCarty Fails to Establish a Title VII Hostile Work Environment Claim

A plaintiff alleging that his employer negligently maintained a hostile work environment must prove that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race; and (5) there is a basis for employer liability. *See Andreoli*, 482 F.3d at 643.

 Carmen Lilick, a co-worker, subjected McCarty to intentional discrimination because of the latter's race. But the discrimination was not severe or pervasive. McCarty has only offered one isolated racist comment. He references two other potentially racist comments: (1) Volunteer Steve Moist's remark about only seeing "blackness;" (2) Downey's email about splitting up the "boys." Neither has merit. McCarty even admitted that "Steve would never make any racial comments to [him]." McCarty Dep. 196:8–12. Downey, moreover, was clearly referring to McCarty and Carmen; Carmen was not African American. Downey did not use the term "boy" in the singular and was not strictly referring to McCarty. McCarty also admitted that he did not "have any evidence of any [other] racial comments that [he] personally heard [himself]." McCarty Dep. 274:1–4. Therefore, I will grant summary judgment on McCarty's Title VII hostile work environment claim.

Finally, all of the race-based claims rejected above must be rejected under § 1981 and the PHRA as well.[13]

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in part and denied in part.

### *ORDER*

**AND NOW,** this 5th day of June 2012, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED** in part and **DENIED** in part as follows:

● Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Count II Title VII Claim, Count III

§ 1981 claim, and Count IV PHRA racial discrimination claim.

● Defendant's Motion for Summary Judgement is **DENIED** as to Plaintiff's Count I ADA Claim and Count IV PHRA disability discrimination claim.

---

**13.** The parties dispute the timeliness of McCarty's § 1981 claim. Due to the claim's failure on the merits, I do not need to address the issue of timeliness.